*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-09-00362-CV

## IN THE INTEREST OF B.R.

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-09727
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting opinion by:  Steven C. Hilbig, Justice

Sitting:    Karen Angelini, Justice
            Steven C. Hilbig, Justice
            Marialyn Barnard, Justice

Delivered and Filed: May 26, 2010

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Luis Vega appeals the judgment ordering him to pay $67,943.78 for retroactive child support,

$850.00 for past medical expenses, and $840.00 a month for current child support. Luis contends

the trial court abused its discretion in ordering retroactive child support back to the time of B.R.'s

birth, ordering payment of past medical expenses, calculating current child support based on his

potential future income, and prohibiting him from filing an action to reduce the amount of child

support set by the court. We affirm in part and reverse and remand in part.

**BACKGROUND**

B.R. was born on May 17, 1994, to Amber Klausner and Luis Vega. At the time of B.R.'s birth, Amber and Luis were both in the United States Military. Amber and Luis never married, and no court order delineated Luis's rights and duties as B.R.'s father. Luis visited B.R. sporadically over the years and provided minimal child support. Luis did not pay any of B.R.'s medical expenses or provide her with health insurance. However, Luis claimed B.R. as a dependent, which resulted in an increase in his military compensation.

When B.R. was born, Luis was an enlisted soldier in the army. In 1997, when his military contract ended, Luis moved to reserve status. Luis testified he returned home to Puerto Rico, where he worked as a pharmacy technician, attended school, and completed his undergraduate studies and law school.

In 2007, Amber filed suit seeking termination of Luis's parental rights so that B.R.'s stepfather could adopt her. Luis, however, did not want his rights terminated and sought an adjudication of parentage and a determination of his rights and duties as B.R.'s father. In response, Amber requested retroactive child support in the event Luis's parental rights were not terminated. At trial, Amber testified regarding B.R.'s relationship with her stepfather and her minimal contact with Luis. The record reflects that since B.R.'s birth, Luis has paid $26,450.00 and that based on his income and the Texas child support guidelines, he should have paid $85,434.82. Amber and Luis reached an agreement on all issues regarding parental rights, but could not agree on retroactive and current child support.

Granting Amber's request for retroactive child support, the trial court determined that Amber was entitled to a lump sum of $67,943.78 for child support arrears going back to B.R.'s birth and

$850 in past medical expenses. The trial court also ordered Luis to pay $840.00 in current monthly child support. Luis now appeals.

### STANDARD OF REVIEW

We review a trial court's order for child support, including an award for retroactive support, for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re Guthrie*, 45 S.W.3d 719, 727 (Tex. App.—Dallas 2001, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding principles or rules. *Worford*, 801 S.W.2d at 109; *In re Guthrie*, 45 S.W.3d at 727. In determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court's and will not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). "In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; as a result, legal insufficiency is not an independent ground of reversible error, but instead constitutes a factor relevant to our assessment of whether the trial judge abused her discretion." *Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.).

In a non-jury trial, where no findings of fact or conclusions of law are filed or requested, all findings necessary to support the trial court's judgment are implied. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

A trial court's implied findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

### DISCUSSION

*A.     Retroactive Child Support*

Luis contends the trial court abused its discretion in requiring him to pay retroactive child support in the amount of $67,943.78. Section 160.636 of the Texas Family Code provides that, upon a finding of parentage in a paternity action, a trial court may order retroactive child support as provided by chapter 154 of the Family Code. TEX. FAM. CODE ANN. § 160.636(g) (Vernon Supp. 2009). Chapter 154, in turn, provides the trial court with guidelines in ordering retroactive child support:

(a)     The child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered.

(b)     In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:

(1)     the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity;

(2)     the obligor had knowledge of his paternity or probable paternity;

(3)     the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4)     the obligor has provided actual support or other necessaries before the filing of the action.

(c)     It is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child.

(d)     The presumption created under this section may be rebutted by evidence that the obligor:

(1)     knew or should have known that the obligor was the father of the child for whom support is sought; and

(2)     sought to avoid the establishment of a support obligation to the child.

(e)     An order under this section limiting the amount of retroactive support does not constitute a variance from the guidelines requiring the court to make specific findings under Section 154.130.

(f)     Notwithstanding any other provision of this subtitle, the court retains jurisdiction to render an order for retroactive child support in a suit if a petition requesting retroactive child support is filed not later than the fourth anniversary of the date of the child's 18th birthday.

*Id.* § 154.131 (Vernon 2008). Section 154.131 does not bind the trial court to these listed factors in determining retroactive child support, but is merely intended to guide the trial court in determining the amount of retroactive child support. *Garza v. Blanton*, 55 S.W.3d 708, 710 (Tex. App.—Corpus Christi 2001, no pet.). The statutory language vests the trial court with discretion to award retroactive support and the amount of that support. *In re Guthrie*, 45 S.W.3d at 727.

Luis first argues that the trial court abused its discretion in ordering retroactive child support covering a thirteen-year period because Amber did not present evidence rebutting subsection 154.131(c)'s presumption that an award of four years of retroactive child support is reasonable and in the best interest of B.R. *See* TEX. FAM. CODE ANN. § 154.131(c) (Vernon 2008). However, Luis's

reliance on the statutory presumption provided by subsection 154.131(c) is misplaced. Section 154.131(c)'s presumption applies when the trial court's order *limits* the amount of retroactive child support to an amount not exceeding the total amount of support that would have been due for the four years preceding the date the petition seeking child support was filed. *See* TEX. FAM. CODE ANN. § 154.131(c) (Vernon 2008). Nowhere does subsection 154.131(c) prohibit a trial court from awarding an amount greater than four years of retroactive child support. That is, if a trial court limits the retroactive child support to the four year amount, the parent seeking more than that amount must rebut the presumption provided by subsection 154.131(c) by proving that the obligor knew or should have known he was the father of the child and that the obligor sought to avoid the establishment of a support obligation to the child. *See* TEX. FAM. CODE ANN. § 154.131(d) (Vernon 2008). Here, however, the trial court's order did not limit the retroactive child support to an amount representing four years of child support; therefore, subsection 154.131(c)'s presumption was not triggered and does not apply to this case.[1]

---

[1] In interpreting a statute, our goal is to ascertain and give effect to the Legislature's intent in enacting it. *In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001) (orig. proceeding). We note that the dissent relies on legislative history to support its interpretation of the Legislature's intent in enacting section 154.131. However, while the Code Construction Act does allow a court to consider legislative history, among other matters, *see* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005), the Texas Supreme Court has warned against courts relying on legislative history instead of the plain language of a statute. In *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006), the supreme court stated that "[o]rdinarily, the truest manifestation of what legislators intended is what lawmakers enacted, *the literal text they voted on*." (emphasis added). "This enacted language is what constitutes the law, and when a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." *Id.* at 651-52. Thus, "wherever possible," courts should "construe statutes as written"; only "where enacted language is nebulous" may courts "cautiously consult legislative history to help divine legislative intent." *Id.* at 652. The supreme court explained that it used the word "cautiously" because while it recognized that "the Code Construction Act expressly authorizes courts to use a range of construction aids, including legislative history," it was "mindful that over-reliance on secondary materials should be avoided, particularly where a statute's language is clear." *Id.* at 652 n.4. According to the court, "[i]f the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae." *Id.* Because the text of section 154.131 is unambiguous, we rely on the plain words of the statute rather than legislative history.

Next, relying on subsection 154.131(b), Luis argues that the amount of the retroactive child support ordered by the trial court is unreasonable and places an undue burden on his family. However, Luis did not offer any evidence of his financial responsibilities and does not demonstrate how he is unduly burdened by the award. Therefore, we look to the evidence and the general guidelines for setting child support in order to determine whether the trial court abused its discretion in awarding retroactive support.

It is undisputed that Luis knew of B.R.'s existence her entire life and received credit for B.R. as a dependent on his military compensation. The evidence indicates that Luis was employed since B.R.'s birth and received military bonuses. Based on Luis's financial information, his child support contribution under the state attorney general standards for the past fifteen years should have been $85,434.82, but he paid only $26,450.00. Luis contributed very little toward B.R.'s care and support in comparison to the amount of income he received. We conclude there is evidence to support the trial court's award of retroactive child support and, therefore, the trial court did not abuse its discretion.

B.    *Current Child Support*

Luis next contends the trial court abused its discretion in calculating current child support on the assumption he could earn $80,000.00 a year. The trial court acknowledged that Luis was not employed, but found that based on Luis's salary history and earning capacity he could earn at least $80,000.00 a year.

Section 154.066 of the Family Code provides that a trial court may order a parent to pay more child support than what the child support guidelines would require if the parent could potentially

earn more money, but has intentionally chosen not to do so. *See* TEX. FAM. CODE ANN. § 154.066 (Vernon 2008). In order for a court to find a parent is intentionally underemployed or unemployed under section 154.066, there must be evidence the parent reduced his income for the purpose of decreasing his child support payments. *See Dubois v. Dubois*, 956 S.W.2d 607, 610 (Tex. App.—Tyler 1997, no pet.). There is no presumption that when a parent is no longer as lucratively employed as he was in previous years, he reduced his income to avoid child support payments. *See Gaxiola v. Garcia*, 169 S.W.3d 426, 432 (Tex. App.—El Paso 2005, no pet.). The requisite intent may be inferred from such circumstances as the parent's education, economic adversities and business reversals, business background, and earning potential. *In re Davis,* 30 S.W.3d 609, 617 (Tex. App.—Texarkana 2000, no pet.). "If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." TEX. FAM. CODE ANN. § 154.066 (Vernon 2008); *see Tenery v. Tenery*, 955 S.W.2d 337, 340 (Tex. App.—San Antonio 1997, no writ). Once the obligor has offered proof of his current wages, the obligee bears the burden of demonstrating the obligor is intentionally underemployed. *Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex. App.—Corpus Christi 2002, no pet.); *Dubois*, 956 S.W.2d at 610.

Luis offered proof that his income was derived from his rental property and military reserve pay. However, the trial court presumed Luis had the earning potential of $80,000.00 a year and ordered him to pay $840.00 per month in child support. The trial court took into consideration Luis's income for the two years during which he was activated from reserve status and deployed to Iraq, once in 2003 and the second in 2006. Amber contends Luis was intentionally underemployed, comes to the court with unclean hands, and has made significant income during his child's life. However,

the issue is whether Luis was underemployed for the purpose of decreasing child support at the time of the trial. *See In re K.N.C.*, 276 S.W.3d 624, 627 (Tex. App.—Dallas 2008, no pet.). The record indicates Luis was an enlisted soldier with a signed military contract that could have been renewed in 1997, but Luis chose to take reserve status and move home to continue his education. Since that time, Luis obtained his undergraduate and law degrees. At the time of trial, Luis was planning to take the bar examination and had an interview in Washington D.C. for a position as a legislative aid. Luis does not dispute that he voluntarily left a lucrative position with the military, but explains he did so to pursue the law degree that he now holds.

Luis's decision to leave the military in 1997 to continue his education does not give rise to an inference of voluntary underemployment to avoid paying child support. *See In re J.G.L.*, 295 S.W.3d 424, 428 (Tex. App.—Dallas 2009, no pet.). There was no court ordered child support in 1997, and there is no evidence Amber was asking Luis for support. Luis accomplished what he set out to do in 1997 — he obtained an undergraduate and a law degree. We conclude there was no evidence presented to the trial court to support a finding of voluntary underemployment or unemployment at the time of the trial. Therefore, the trial court abused its discretion in basing child support on the presumption of Luis's earning potential of $80,000.00 a year. *See id.* We reverse the judgment in part and remand the cause so that the trial court can determine current child support pursuant to the applicable Family Code provisions.

Luis also claims the trial court erred in requiring him to pay half of B.R.'s counseling fees, which he claims were incurred solely for the purpose of terminating his parental rights. Amber testified the counseling was not sought specifically for preparing for the adoption but because B.R. was going through a tumultuous time. The trial court properly exercised its discretion in requiring

Luis pay one-half of B.R.'s counseling fees. *See* TEX. FAM. CODE ANN. §§ 154.008, 154.064 (Vernon 2008).

## C.     *Modification of Child Support*

Finally, Luis contends the trial court erred in ordering that he could not file an action seeking to reduce the current child support amount. However, nothing in the judgment restricts Luis from seeking relief in the trial court as allowed by the applicable law. Thus, Luis's third issue presents nothing for review.

### CONCLUSION

The trial court abused its discretion in calculating current child support on the assumption Luis had the earning potential of $80,000.00 a year. Therefore, we reverse the trial court's judgment setting current child support at $840.00 a month, and remand the cause to the trial court for a new trial on that issue. In all other respects, we affirm the trial court's judgment.


Karen Angelini, Justice