**Affirmed as Modified and Majority and Concurring Opinions filed May 22, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00281-CV

### IN THE INTEREST OF A.B., A CHILD

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2008-59828**

## M A J O R I T Y   O P I N I O N

Appellant, Father of the minor child, A.B., appeals the portion of a "Final Order Under Uniform Interstate Family Support Act," requiring that he pay retroactive child support and post-judgment interest thereon for A.B.[1]  In six issues, Father challenges the award of any retroactive support or alternatively the amount of such support and contends the trial court recited an incorrect rendition date in the order relative to accrual of post-judgment interest.  We modify the order to reflect the correct rendition date and affirm as modified.

---

[1] On the court's own motion, we will refer to the child using fictitious initials and to the parents as "Father" or "Mother."  *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2011).

# I. BACKGROUND

Mother became pregnant with A.B. during a brief relationship with Father while he was working in Russia, Mother's native country. During the pregnancy, Father paid travel expenses for Mother's relocation to Colorado, where A.B. was born on January 19, 1994. After the birth, Mother wrote to Father, expressing that she assumed full responsibility for A.B. but requested temporary assistance until she could establish financial stability. For at least four years, Father made regular payments for support of A.B.—through either a ministry that employed Mother or directly to Mother—and a few lump sum payments. Although Mother and Father disagree regarding the date of the last payment, they agree that the total payments averaged at least $460 per month. Additionally, since Mother gained eligibility for participation in an employer-sponsored health plan in 1996, she has paid all premiums and health-care expenses for A.B.

Mother testified that Father quit making any support payments in mid-July 1998 and refused her request for additional support, so she retained an attorney. The record includes a February 1999 letter from Mother's attorney to Father, expressing Mother's intent to establish a support obligation and her desire to amicably resolve the issue without legal action. According to Mother, Father responded by phoning Mother and threatening the following actions if she continued to pursue a support obligation: "I will bleed you to death. I will take your child away. I will deport you. You will never see [A.B.]." Mother testified that, based on fear of these threats, she did not further pursue a support obligation until she contacted her local "social service" in 2006 when the child's expenses increased.

In contrast, Father denied making any threats. Instead, Father testified he quit making payments after receiving the February 1999 letter because an attorney advised that Father establish an agreement before making further payments and he wished to obtain information about Mother's income and A.B.'s needs. The record includes a responsive letter to Mother's attorney, in which Father also indicated his desire to amicably resolve the issue but requested information regarding Mother's income and

A.B.'s expenses and expressed concern about A.B.'s living environment. Father testified that he received no response or further request for support until 2008, when he was served with the present suit. However, during this period, Father sent A.B. some cards and gifts, enrolled her in the Texas Tomorrow Fund, a pre-paid college tuition plan, and paid $185 per month into the plan from its inception in 2002 through the time of trial in 2010.

In 2008, the Office of the Attorney General of Texas ("Attorney General") filed the present suit against Father under the Uniform Interstate Family Support Act seeking to establish a child-support obligation for A.B., who still resided in Colorado at that time. The Attorney General later supplemented its request to also seek medical and retroactive support. The trial court signed an agreed temporary order requiring Father to pay prospective child support of $1,100 per month and medical support, beginning May 1, 2009.[2] Mother then filed a petition, seeking to establish Father's paternity and requesting current and retroactive child support and medical support.

On October 25, 2010, the trial court conducted a bench trial, during which the primary issue was the request for retroactive support. After hearing evidence, the trial court orally announced it found Father should have paid $1,000 per month for the period between August 1, 1998 and April 30, 2009 (129 months) for a total of $129,000, and this figure included retroactive medical support. On November 5, 2010, the trial court signed a "Final Order Under Uniform Interstate Family Support Act," requiring Father to pay prospective child support of $1,100 per month, prospective medical support of $125 per month, retroactive support of $129,000, representing the above-referenced period, payable in monthly installments, and post-judgment interest on the retroactive award.[3] Father timely filed a motion for new trial, which the trial court denied by written order.

---

[2] The parties agreed that Father, who was earning $125,000 annually as of 2009, had monthly net resources of at least $7,500 for purposes of applying the child-support guidelines. *See* Tex. Fam. Code Ann. § 154.125 (West Supp. 2011).

[3] The trial court also found that Father is the father of A.B. and owes a duty of support. On appeal, Father does not raise any issues concerning paternity.

## II. ANALYSIS

On appeal, Father challenges only the portion of the order requiring payment of retroactive child support and post-judgment interest thereon.

### A. Challenge to Any Retroactive Support

In his first issue, Father challenges the requirement that he pay any retroactive support. We review a trial court's award of retroactive support for abuse of discretion. *In re Q.D.T.*, No. 14-09-00696-CV, 2010 WL 4366125, at *2 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Garza v. Blanton*, 55 S.W.3d 708, 710 (Tex. App.—Corpus Christi 2001, no pet.)). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles, or fails to correctly analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under the abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Q.D.T.*, 2010 WL 4366125, at *2. A trial court does not abuse its discretion when some evidence of a substantive and probative character supports its order. *Q.D.T.*, 2010 WL 4366125, at *2; *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When, as in the present case, the trial court does not file findings of fact and conclusions of law, we imply the trial court made all findings necessary to support its judgment and will uphold those findings if supported by sufficient evidence. *A.L.S.*, 338 S.W.3d at 65.[4]

---

[4] Father timely requested the trial court to make findings of fact and conclusions of law and subsequently filed a timely notice of past due findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296, 297. The trial court then requested that the parties submit proposed findings and conclusions, and all parties complied. However, the trial court did not file any findings or conclusions. On appeal, Father does not challenge the trial court's failure to make findings or conclusions.

Under Texas law, on a finding of parentage, a trial court may order retroactive child support as provided in Family Code Chapter 154. Tex. Fam. Code Ann. § 160.636(g) (West 2008).[5] Under Chapter 154, a trial court may order a parent to pay retroactive child support if the parent (1) has not previously been ordered to pay support for the child, and (2) was not a party to a suit in which support was ordered. *Id.* § 154.009(a) (West 2008). Undisputedly, Father was not previously ordered to pay support for A.B. and was not a party to a suit in which support was ordered.

In ordering retroactive support, the court "shall apply" the child-support guidelines prescribed in Family Code Chapter 154. *Id.* § 154.009(b) (West 2008). Section 154.131, entitled "Retroactive Child Support," includes the following provisions:

(a) The child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered.

(b) In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:

(1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity;

(2) the obligor had knowledge of his paternity or probable paternity;

(3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4) the obligor has provided actual support or other necessaries before the filing of the action.

*Id.* § 154.131(a), (b) (West 2008).

Father relies on the factors outlined in section 154.131(b) and the following alleged facts to support his argument that the trial court abused its discretion by ordering any retroactive support: Father's relationship with Mother was brief; Mother expressed

---

[5] Subject to exceptions inapplicable in the present case, a Texas court, when acting as responding tribunal in a proceeding under the Uniform Interstate Family Support Act shall (1) apply procedural and substantive law generally applicable to similar proceedings originating in Texas and may exercise all powers and provide all remedies available in those proceedings, and (2) determine the duty of support and amount payable in accordance with the law and support guidelines of Texas. Tex. Fam. Code Ann. § 159.303 (West 2008).

her intent to assume full responsibility for the child and requested only temporary assistance; Father nonetheless provided support beyond the temporary period; when Mother then requested establishment of a support obligation, Father indicated his desire to resolve the issue; on advice of counsel, he quit making payments to await the outcome of legal proceedings, which did not materialize at the time; Mother's claim that Father threatened various repercussions if she further pursued a formal support obligation is belied by the fact he voluntarily provided support beyond the requested temporary period, the tone of his written response to the February 1999 letter from Mother's attorney, and the fact he continued sending cards and gifts to A.B. after this letter; Mother requested support after ten years of "silence," although she knew Father's whereabouts during this period; Mother testified she sought retroactive support primarily to enable A.B. to attend college but Father voluntarily established the college tuition plan and made continual payments toward satisfaction of its contractual terms; and retroactive support would create a financial hardship because of Father's prospective support obligation of $1,100 per month for A.B. and his responsibility to provide for his other three minor children and a minor stepchild who all live in Father's home.

We conclude the trial court did not abuse its discretion by ordering retroactive support. Regardless of the length of his relationship with Mother, Father does not dispute that he fathered A.B. and knew about the child since her birth. Therefore, the evidence supports a finding that Father should have continually supported the child irrespective of whether Mother viewed the responsibility as solely her own and requested only temporary assistance.[6] Moreover, as Father suggests, the support he provided for at least four years after the birth can be characterized as more than "temporary"; yet, this fact supports the trial court's decision because Father then quit making any payments for ten years despite his proven ability to provide some support. In fact, although the record lacks direct evidence of Father's income for some of these years, he has been continually

---

[6] Father also cites his request that Mother terminate the pregnancy when arguing he should not have been required to pay retroactive support. However, such fact has no relevance in a determination of whether to order payment of child support, for the reasons further discussed by our concurring colleague.

6

employed by the same company since A.B.'s birth, further indicating he had the ability to support the child. Further, the trial court was free to believe Mother's testimony regarding Father's threats and conclude she requested continued assistance but he quit making payments because of her attempt to establish a formal obligation; or, alternatively, even if Father made no threats and Mother voluntarily refrained from pursuing a formal obligation, Father should have continued to support A.B. during the ten-year period instead of making an ill-advised decision to cease payments.

Additionally, the trial court acted within its discretion by concluding that Father's responsibility to provide for his younger children did not negate a finding that retroactive support for A.B. is appropriate. Father testified that the temporary support obligation for A.B. of $1,100 per month in effect at the time of trial (the same amount as the prospective support obligation imposed in the final order) had triggered elimination of his younger children's extracurricular activities and generally created a "hardship." However, he presented no specific evidence that he was unable to provide for the younger children's past needs because of the temporary support obligation or their future needs upon rendition of a final obligation or retroactive award. Without more specific information regarding the "hardship," the trial court could have determined that Father, who earned $125,000 annually at the time of trial, had financial capability to support the younger children and pay retroactive support for A.B. In fact, the final order indicates the trial court may have considered Father's obligation to also support the younger children because the court ordered that the retroactive award be paid in monthly installments of $500 while Father is paying prospective support for A.B. and monthly installments of $1,600 when the prospective obligation terminates; i.e., the court ensured Father would not be required to pay more than $1,600 per month at any time.

Finally, the trial court could have determined that retroactive support was proper irrespective of Father's payments into the college tuition plan. Despite Mother's testimony that her primary goal in obtaining retroactive support was enabling A.B.'s college education, the trial court was not bound by her expressed wishes; instead, the

court could have found that some retroactive support was proper to account for the child's needs for the ten-year period in which Father paid no support. The trial court could have also considered there was no requirement that funds in the plan be used for A.B.'s college expenses: neither Mother nor A.B. control the funds, Father bears no obligation to continue funding the plan, and Father will forfeit only an administrative fee and accrued interest if he obtains a refund of existing funds in the plan. Father asserts the trial court could have alleviated this "speculative" aspect by ordering Father to continue funding the plan until the contract is fully satisfied, characterizing this obligation as additional child support, and assigning the benefits of the plan to Mother and/or A.B. However, the court acted within its discretion by implicitly rejecting this proposition and instead permitting Mother to decide whether to use some or all of the retroactive award for A.B.'s education while allowing Father to control disposition of existing funds in the plan and decide whether to continue funding the plan.

In sum, because some evidence supports the trial court's decision, it did not abuse its discretion by ordering retroactive support. We overrule Father's first issue.

## B.    Challenge to Amount of Retroactive Support

Father's second, third, and fourth issues all concern the amount of the retroactive support award.

### 1.    Presumption under section 154.131

In his second issue, Father contends the trial court abused its discretion by failing to apply the presumption addressed in Family Code section 154.131(c) and (d):

> (c)  It is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child.
>
> (d) The presumption created under this section may be rebutted by evidence that the obligor:

8

> (1) knew or should have known that the obligor was the father of the child for whom support is sought; and
>
> (2) sought to avoid the establishment of a support obligation to the child.

*Id.* § 154.131(c), (d). Father contends the trial court was required to limit retroactive support to the amount that would have been due for the referenced four-year period because there was no evidence Father sought to avoid establishment of a child-support obligation. We disagree.

Contrary to Father's suggestion, under its plain language, section 154.131(c) does not prohibit a trial court from ordering retroactive support for a period greater than the referenced four years or provide that only an award limited to the four-year period is reasonable and in the child's best interest, absent the circumstances described in section 154.131(d). *See id.* § 154.131(c), (d); *see also In re B.R.*, 327 S.W.3d 208, 212 (Tex. App.—San Antonio 2010, no pet.), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011). Rather, the presumption applies if the trial court limits retroactive support to the four-year period; in such a case, the parent who sought more than an amount representing the four years must rebut the presumption. *See* Tex. Fam. Code Ann. § 154.131(c), (d); *see In re B.R.*, 327 S.W.3d at 212. Because the trial court did not limit retroactive support in the present case to the four-year period, the presumption does not apply.

Nonetheless, even if we adopt Father's construction of section 154.131(c) and (d), the Attorney General and Mother did rebut the presumption because it is undisputed Father knew he was A.B.'s father and the Attorney General and Mother presented evidence Father sought to avoid establishment of a child-support obligation. *See* Tex. Fam. Code Ann. § 154.131(d). Father suggests that the exception mentioned in section 154.131(d) refers to actions intended to "actively" avoid establishment of a child-support obligation, such as concealing one's whereabouts, substantially delaying support proceedings, or intentionally reducing one's income. However, this provision contains no such limitations. *See id.* Based on Mother's testimony that Father threatened repercussions if Mother pursued a formal child-support order, the trial court would not

9

have abused its discretion by determining Father "sought to avoid the establishment of a support obligation." *See id.* Accordingly, we overrule appellant's second issue.

## 2.    Calculation of $129,000

Father's third and fourth issues are interrelated. In his third stated issue, Father contends the trial court abused its discretion by awarding $129,000 in retroactive support because the evidence is legally and factually insufficient to support that amount. In his fourth stated issue, Father contends the trial court abused its discretion by failing to utilize federal minimum wage to determine Father's net resources for purposes of calculating retroactive support for certain years. The gist of these issues is that the trial court abused its discretion by failing to properly apply the guidelines for determining prospective child support which would have yielded a lower figure than $129,000.

Specifically, Father posits that a conflict exists between sections 154.009(b) and 154.131 relative to the method for determining the amount of retroactive support: section 154.009 provides that the trial court "shall apply" the child-support guidelines prescribed in Chapter 154 when ordering retroactive support; Tex. Fam. Code Ann. § 154.009(b); but section 154.131 provides that the child-support guidelines are "intended to guide the court" in ordering retroactive support and the court "shall consider" the obligor's net resources during the relevant period in addition to other factors listed in section 154.131. *Id.* § 154.131(a), (b). According to Father, these provisions are reconcilable as follows: the court must calculate retroactive support by applying the prospective child-support guidelines, which require application of defined percentages to net resources for each month in the relevant period, and then may adjust downward using the factors listed in section 154.131(b). *See* Tex. Fam. Code Ann. § 154.125–.129 (West 2008 & Supp. 2011) (providing that, when calculating prospective support, the trial court "shall presumptively apply" a defined percentage (based on the number of children the obligor is required to support) to his monthly net resources that are not greater than $7,500 and may order additional amounts if net resources exceed $7,500, depending on the parties'

10

incomes and proven needs of the child); *id.* § 154.062 (West Supp. 2011) (providing that net resources are the obligor's income minus various taxes and expenses).

Father testified his salary was at least $100,000 in 2006 and $125,000 annually for 2007 through 2009; however, there was no direct evidence regarding his salary for 1998 through 2005. Therefore, Father argues that the trial court was required to utilize federal minimum wage when calculating support for 1998 through 2005 but ignored this statutory mandate and arbitrarily selected $1,000 "across the board" as the monthly support figure for all those years. *See id.* § 154.068 (West 2008) (providing that, absent evidence of a party's wage and salary income, the court "shall" presume his wages or salary equal federal minimum wage for a 40-hour week). Father also suggests that the $1,000 per month retroactive award was arbitrary even for 2006 through 2009 under a precise application of the defined percentages to his net resources for those years. In his appellate brief, Father outlines the amount of retroactive support that purportedly should have been ordered for each year in the retroactive period under the guidelines.

We conclude appellant failed to preserve error on his contention. To preserve an issue for appellate review, a party must make a timely objection or request to the trial court, sufficiently stating the specific grounds for the requested ruling, unless apparent from the context, and obtain an adverse ruling. *See* Tex. R. App. P. 33.1(a). We recognize that, following a bench trial, a party may assert a legal or factual sufficiency complaint for the first time on appeal. *See* Tex. R. App. P. 33.1(c). Appellant incorporates a sufficiency complaint into one of his issues. However, as noted above, sufficiency contentions are not independent points of error when the abuse-of-discretion standard applies and instead are merely factors in the abuse-of-discretion analysis. *See* *A.L.S.*, 338 S.W.3d at 65. In fact, the crux of Father's interrelated third and fourth issues has more than a sufficiency component; he contends the trial court abused its discretion by arbitrarily selecting $1,000 per month in retroactive support instead of applying the statutory prospective support guidelines which require application of defined percentages to net resources for every relevant year; or alternatively, even if the trial court purported

to apply these guidelines, its calculations did not comport with the guidelines. Within this contention, Father presents a sub-issue that the trial court was required to presume Father earned minimum wage to calculate net resources for certain years because there was no evidence of his income during those years.[7] A contention that a trial court abused its discretion is not an exception to the rule requiring preservation of error. *See* Tex. R. App. P. 33.1; *Knight v. Knight*, 301 S.W.3d 723, 730 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding wife waived complaint that trial court abused its discretion in dividing marital property by improperly valuating wife's 401(k) when evidence showed value should be reduced by a loan against the 401(k)); *Knight v. Knight*, 131 S.W.3d 535, 539–40 (Tex. App.—El Paso 2004, no pet.) (holding father waived contention that trial court abused its discretion by basing current and retroactive child support on father's income several years before trial rather than minimum wage absent evidence concerning husband's current income).

When the trial court orally announced its decision after hearing evidence, Father did not object or otherwise raise the complaint presented on appeal. In his motion for new trial, Father presented only two arguments with respect to retroactive support. He raised the contention regarding the four-year presumption, discussed above. He also asserted, "The Court did not take into account all issues related to determining retroactive child support" and cited the provisions of section 154.131 relative to matters a trial court

---

[7] Because a trial court's oral comments do not substitute for findings of fact and conclusions of law, *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984), we do not necessarily agree that the trial court awarded $1,000 per month "across the board." Moreover, we cannot foreclose the possibility that the trial court did apply the prospective support guidelines, utilized minimum wage to calculate net resources for 1998 through 2005, and applied the defined percentages to net resources for all relevant years, yet the court found the evidence justified a variance from application of the guidelines for some or all relevant years. *See* Tex. Fam. Code Ann. §§ 154.122, .123(a) (West 2008) (providing that trial court may determine application of the statutory guidelines would be "unjust or inappropriate under the circumstances" and may deviate from the guidelines if evidence rebuts the presumption that application thereof "is in the best interest of the child and justifies a variance"); *id.* § 154.123(b) (West 2008) (providing court "shall" consider evidence of all relevant factors, including certain enumerated factors, when deciding whether application of the guidelines would be unjust or inappropriate under the circumstances). On appeal, Father does not directly challenge an implied finding that a variance was justified. Regardless, we need not decide whether the trial court was required to apply the prospective guidelines or whether its calculations comported with the guidelines because Father did not preserve error on his complaint.

must consider when ordering retroactive support. However, Father, specifically confined his argument that any retroactive support, or the amount thereof, was improper under section 154.131 to mentioning the financial hardship on his younger children, his prior support of A.B., and his "offers" to resolve the support issue when he was contacted by Mother's attorney in 1999. In a brief supporting his motion for new trial, Father reiterated these arguments and more particularly defined the prior support referenced in the motion as his previous payments to Mother and funding of the college tuition plan. However, in the motion and brief, Father never challenged the amount of support on the ground the trial court failed to apply the prospective support guidelines, much less that it failed to utilize minimum wage for years lacking evidence of Father's income or deviated from the guidelines even for years in which evidence established his income. Accordingly, we overrule Father's third and fourth issues.

### 3.     Refusal to apply credit for other support

In his fifth issue, Father contends the trial court abused its discretion by failing to apply credit against the retroactive award for his support of A.B. since 2002—namely, payments into the college tuition plan. Whether "the obligor has provided actual support or other necessaries before the filing of the action" is a factor relative to determination of retroactive child support. Tex. Fam. Code Ann. § 154.131(b)(4). However, this provision includes no requirement that the trial court *must* credit a retroactive award if the obligor has provided any actual support. *See id.* Again, we apply the same reasoning discussed above when addressing the college tuition plan with respect to the trial court's decision to award any retroactive support: the court acted within its discretion by permitting Mother to decide whether to use some or all of the retroactive support for A.B.'s college education while allowing Father to control funds in the plan, rather than ordering that the funds be used for A.B.'s college education and applying a credit against the retroactive award. We overrule Father's fifth issue.

13

**C. Rendition Date of the Order Relative to Accrual of Post-Judgment Interest**

In his sixth issue, Father argues the trial court recited an incorrect rendition date in the order which affects the accrual date for post-judgment interest. In its order, the trial court recited,

> It is FOUND that retroactive child support should be ordered for the period between August 1, 1998 and April 30, 2009 in the amount of $129,000.00, *as of April 30, 2009 . . .*

(emphasis added). The court then ordered that interest be paid at the rate of six percent per annum. Although not exactly clear, the trial court apparently recited April 30, 2009 as the rendition date of its order for all purposes, including accrual of post-judgment interest. *See id.* § 157.265(c) (West 2008) (providing that interest accrues on money judgment for retroactive child support at annual rate of six percent simple interest from date order is rendered until judgment is paid).

As Father suggests, the order was rendered on October 25, 2010 when the trial court orally announced its decision after hearing evidence. *See S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) (stating rendition occurs when trial court announces its decision in open court or files written memorandum with the clerk). The Attorney General and Mother agree the order should be modified to clearly reflect October 25, 2010 as the rendition date. Accordingly, we sustain Father's sixth issue.

We modify the trial court's order to change the language "as of April 30, 2009" in the above-quoted paragraph to "as of October 25, 2010" and affirm the order as modified.

/s/    Charles W. Seymore
        Justice

Panel consists of Justices Frost, Seymore, and Jamison (Frost, J., concurring).

14