# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00408-CV

---

**Ricky Gonzales, Jr., Appellant**

**v.**

**Shannon Marie Gonzales, Appellee**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-001620, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

## O P I N I O N

Ricky Gonzales, Jr. appeals the divorce decree after bench trial that dissolved his marriage to Shannon Marie Gonzales and awarded conservatorship and possession of the parties' child. The decree also awarded $132,000 in damages to Shannon based on claims that Ricky had committed the torts of civil assault and intentional infliction of emotional distress.[1] On appeal, Ricky challenges the trial court's (1) findings that he committed family violence, assault, and intentional infliction of emotional distress and (2) awards for exemplary damages and retroactive child support and a money judgment for the same and attorneys' fees. We sustain only the portion of Ricky's issues that challenges the award of the money judgment for the retroactive child support otherwise properly awarded; we overrule the rest of the issues and their subparts. We thus affirm in part and reverse and render in part.

---

[1] Because of the shared surname, we refer to the parties by their first names for clarity.

## BACKGROUND

Ricky and Shannon married in February 2019 and separated in March 2020. They have a child together, and Shannon has daughters from an earlier relationship. Ricky and Shannon underwent considerable conflict in their marriage. Ricky filed for divorce, the couple soon separated, and Shannon counter-petitioned for divorce. They pressed competing claims for relief, including claims for custody and possession and monetary claims involving the community estate. Shannon pleaded tort claims as well—for assault and intentional infliction of emotional distress (IIED). The parties tried the suit to the bench, with each side calling several witnesses and offering many exhibits. Shannon's attorney impeached Ricky more than once using recordings of the couple's arguments. On the last day of trial after the evidence closed, the court said what "will be the order of the court" and discussed many of the parties' claims.

After trial, Shannon filed a "Motion to Enter" and a proposed divorce decree. The court held a two-day hearing on the motion and over a month later signed its Final Decree of Divorce. The decree includes a disproportionate division of the community estate in Shannon's favor; a judgment in Shannon's favor on her claims for assault and IIED, including an award of damages; injunctive relief commanding Ricky not to take certain actions toward Shannon; an award to Shannon of retroactive child support; separately, a money judgment in Shannon's favor for the retroactive child support otherwise awarded; and an award of attorneys' fees in her favor. To carry out its division of the community estate, the court in the decree ordered Shannon to make an equalization payment.

After the court rendered judgment, Ricky requested findings of fact and conclusions of law and properly notified the court when the findings and conclusions were past due. The court

2

sent its findings and conclusions to the parties, and they include rulings about what the decree ordered and awarded and a finding of "family violence" by Ricky. Ricky appeals the decree.

## DISCUSSION

### I.     Ricky's challenges over findings about assault, IIED, and family violence all fail.

Ricky's first issue involves findings purportedly not made by the trial court or not supported by legally and factually sufficient evidence. He challenges findings supporting Shannon's recovery for assault and IIED and the finding of "family violence."[2] As relief for the assault and IIED claims, the decree awarded what it termed "exemplary damages in the amount of . . . $132,000.00." It also enjoined Ricky from communicating with Shannon "in a threatening or harassing manner" and "installing any device for recording any matter whatsoever on any property owned by Shannon . . . , personal or real, and included but not limited to residences and vehicles," among other actions. Ricky challenges the $132,000 damages award on grounds that the trial court failed to find that Ricky acted with malice and that the evidence was insufficient to support any presumed finding of malice.

#### A.     *Tort claims for assault and IIED*

Tort claims, including for assault or IIED, generally may be brought by one spouse against the other in their divorce suit. *See Twyman v. Twyman*, 855 S.W.2d 619, 622–25 & nn.4, 13 (Tex. 1993) (op. of Cornyn, J., joined by Hightower, J.); *id.* at 626 (concurrence of Gonzalez, J.); *id.* at 641, 644, 645 (dissent of Spector, J., joined by Doggett, J.); *see, e.g.*, *Ross v.*

---

[2] He also argues that the trial court was biased against him and because of this we should use a different standard of review in reviewing the court's actions. However, after reviewing the record, we conclude that the court was not biased against him. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 239–41 (Tex. 2001) (per curiam).

*Ross*, No. 03-02-00771-CV, 2004 WL 792317, at \*5–12 (Tex. App.—Austin Apr. 15, 2004, no pet.) (mem. op.). Appellate review of rulings on such claims generally tracks the standards that apply to review of similar rulings in ordinary civil suits. *See, e.g.*, *Bertram v. Bistrup*, No. 03-05-00333-CV, 2009 WL 1099248, at \*2–3 (Tex. App.—Austin Apr. 22, 2009, no pet.) (mem. op.); *Ross*, 2004 WL 792317, at \*5–6.

When, as here, the parties try the suit to the bench, the court makes findings of fact, and there is a reporter's record of trial, the findings are reviewable for legal and factual sufficiency by the same standards applied in reviewing evidence supporting a jury answer. *See Catalina v. Blasdel*, 881 S.W.2d 295, 296–97 (Tex. 1994); *12636 Rsch. Ltd. v. Indian Bros., Inc.*, No. 03-19-00078-CV, 2021 WL 417027, at \*5 (Tex. App.—Austin Feb. 5, 2021, no pet.) (mem. op.). For legal sufficiency, we consider all the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor. *Ross*, 2004 WL 792317, at \*5. We overrule the challenge if more than a scintilla of evidence supports the finding under attack. *See id.* Evidence surpasses a mere scintilla, thus becoming legally sufficient to support the finding, when it allows reasonable and fair-minded people to differ in their conclusions on the contested issue. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822–23, 827 (Tex. 2005); *Ross*, 2004 WL 792317, at \*5. For factual sufficiency, we consider all the evidence for and against the finding under attack and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Ross*, 2004 WL 792317, at \*6. The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* We may not substitute our judgment for that of the factfinder just because we might reach a different conclusion. *Id.*

4

*1.    The evidence was sufficient to support the elements of the assault claim.*

The trial court's findings of fact and conclusions of law included rulings that Ricky "has committed family violence," he "has committed simple assault," "based on [his] actions the . . . exemplary damages . . . in the Final Decree of Divorce were reasonable and necessary," and "the 'exemplary damages' awarded . . . include compensatory damages that are more than nominal." (Italics removed.) Shannon pleaded three theories of assault: Ricky (1) "intentionally or knowingly or recklessly caused bodily injury to [Shannon] by pushing [her] and causing injuries to" her, (2) he "intentionally and knowingly threatened [her] by verbally threatening [her] that he intended to kill her which placed [her] in fear or apprehension of imminent bodily injury," and (3) he "intentionally or knowingly caused physical contact with [her] by using the child's car seat to hit [Shannon] in a fit of rage while he was holding the child when [he] knew or should have reasonably believed that [Shannon] would regard such contact as offensive or provocative." If the judgment on the claim is sustainable on any one of these theories, then we need not analyze Ricky's arguments under the other two theories. *See* Tex. R. App. P. 47.1; *Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 812 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 870–71 (Tex. App.—Dallas 2008, no pet.); *Kupchynsky v. Nardiello*, 230 S.W.3d 685, 692 (Tex. App.—Dallas 2007, pet. denied).

The elements of a claim for assault are mostly the same as those of the criminal offense. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012); *see also Howard v. Howard*, 102 S.W.2d 473, 473–75 (Tex. App.—Austin 1937, writ ref'd) (to support claim "for actual and exemplary damages for personal injuries resulting from an alleged assault and battery," plaintiff had to prove "that he received injuries as a proximate result" of the assault and battery). The Penal Code's elements of assault under the theory of causing bodily injury are that (1) the defendant

5

intentionally, knowingly, or recklessly (2) caused bodily injury to the plaintiff. *See* Tex. Penal Code § 22.01(a)(1); *Loaisiga*, 379 S.W.3d at 256; *McCall v. State*, 635 S.W.3d 261, 267 (Tex. App.—Austin 2021, pet. ref'd). Shannon's first pleaded theory is for this kind of assault, and Ricky challenges the sufficiency of the evidence to support findings on what he calls the element of "contact[ing] or caus[ing] an object to contact Shannon's body" and on the mental-state element.

The evidence was legally sufficient to support both Penal Code elements—that Ricky (1) intentionally, knowingly, or recklessly (2) caused Shannon bodily injury. She testified about an incident when the two were in their bed. Ricky began yelling, and "he start[ed] coming at [her,] and he's like, 'Oh, you're going to cry? You're going [to] cry?'" He pushed her against a nightstand. She tried to physically resist him, but, in her words, her resistance "wasn't a hit" but "was in self-defense because he was attacking" her. She testified that she sustained injuries and offered a photo of bruises up and down her back. The trial court was entitled to believe Shannon's testimony—a credibility determination that we do not disturb—and that testimony plus the photo would allow reasonable and fair-minded people to conclude that Ricky had knowingly caused Shannon bodily injury. *See* Tex. Penal Code §§ 1.07(a)(8) (definition of "bodily injury"), 6.03(b) (definitions of acting knowingly); *Thomas v. State*, 303 S.W.3d 331, 333–34 (Tex. App.—El Paso 2009, no pet.) (evidence was sufficient to support causing-bodily-injury element in part because evidence showed that defendant pushed victim with his hands, causing her to stumble; victim felt pain from the push; and witness noted redness on victim's back from the push).

For factual sufficiency, Ricky argues that Shannon's evidence is conclusory and that his testimony contradicts her evidence.[3] But Shannon testified about what happened to her and what she experienced first-hand, and the trial court was entitled to believe her and disbelieve Ricky's denials. *See Ross*, 2004 WL 792317, at *6; *see also Gardner v. Abbott*, 414 S.W.3d 369, 385 n.19 (Tex. App.—Austin 2013, no pet.) (stating that lay testimony "is not conclusory when it recites some facts and gives details that can be rebutted"); *Siddiqui v. Siddiqui*, No. 14-07-00235-CV, 2009 WL 508260, at *3 (Tex. App.—Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem. op.) ("As factfinder, the court was free to believe [wife]'s testimony and disbelieve [husband]'s testimony" about husband's assault claim.).

Ricky also asserts that the court's findings and conclusions lack any findings about assault, but his position is without merit. He argues that "the trial court made no findings as to any element for the claim of assault apart from stating that Ricky committed simple assault." Rule of Civil Procedure 299 provides that for suits tried to the bench, the trial court's findings "form the basis of the judgment upon all grounds of recovery . . . embraced therein" and "[t]he judgment may not be supported upon appeal by a presumed finding upon any ground of recovery . . . no element of which has been included in the findings of fact." But under the same rule, "[s]o long as the trial court makes a finding as to at least one element of a cause of action, [we] may presume that the trial court made implied findings as to the remaining elements." *Clinton v. Gallup*, 621 S.W.3d 848, 850 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing Tex. R. Civ. P. 299);

---

[3] He also appears to argue that Shannon's sworn testimony is not evidence at all because much of it includes "accusation[s]." These arguments must really be about the weight to be given Shannon's testimony because sworn testimony *is* evidence. *See Manning v. Johnson*, 642 S.W.3d 871, 885 n.6 (Tex. App.—Texarkana 2021, no pet.); *Cauble v. Key*, 256 S.W. 654, 655 (Tex. App.—Austin 1923, no writ).

7

*accord Penta v. Easy St. Cap., LLC*, No. 03-21-00606-CV, 2023 WL 7169565, at *6 (Tex. App.—Austin Oct. 31, 2023, no pet.) (mem. op.). Damages are a recognized element for an assault claim like what Shannon pleaded. *See, e.g.*, *Harned v. E-Z Fin. Co.*, 254 S.W.2d 81, 85 (Tex. 1953); *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 755–56 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *see also Howard*, 102 S.W.2d at 473–75 (assault-and-battery plaintiff needed to prove "that he received injuries as a proximate result" of the assault and battery to support damages). Therefore, because the court's findings and conclusions address damages for the assault claim, we may presume that the trial court made implied findings on the remaining elements of assault. *See, e.g.*, *Dunn v. Southern Farm Bureau Cas. Ins. Co.*, 991 S.W.2d 467, 476–77 (Tex. App.—Tyler 1999, pet. denied) (presence of finding "that [plaintiff] suffered $220,000.00 in damages as a result of the accident in question" allowed court of appeals to presume remaining necessary findings on tort claim for negligence); *Jefferson County v. Sterk*, 830 S.W.2d 260, 262 (Tex. App.—Beaumont 1992, writ denied) (presence of "finding of damages for mental anguish" allowed court of appeals to presume remaining necessary findings on tort claim for negligence).

We overrule this portion of Ricky's first issue.

### 2. The evidence was sufficient to support the elements of the IIED claim.

The trial court made these rulings relevant to IIED in the findings and conclusions: Ricky "has committed family violence," he "has committed" IIED, "based on [his] actions the . . . exemplary damages . . . in the Final Decree of Divorce were reasonable and necessary," and "the 'exemplary damages' awarded . . . include compensatory damages that are more than nominal." (Italics removed.) The relevant section of Ricky's opening brief states this discrete

8

subpart of the issue as: "Shannon failed to present adequate evidence to support her claim for IIED, and the court's findings."[4]  IIED "has four elements: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe."  *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017); *accord Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  Ricky's arguments address all four elements.[5]

a.      Extreme and outrageous conduct

We begin with IIED's second element—extreme and outrageous conduct—which is satisfied only if "the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Hersh*, 526 S.W.3d at 468 (quoting *Kroger Tex. Ltd. P'ship v. Suberu*,

---

[4] As with the assault claim, Ricky argues here that the findings and conclusions lack findings about IIED.  We again conclude that because the findings and conclusions address damages for the tort, we may presume that the court made implied findings on the remaining elements of the tort.  *See, e.g.*, *Dunn v. Southern Farm Bureau Cas. Ins. Co.*, 991 S.W.2d 467, 476–77 (Tex. App.—Tyler 1999, pet. denied); *Jefferson County v. Sterk*, 830 S.W.2d 260, 262 (Tex. App.—Beaumont 1992, writ denied); *see also Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993) (describing "emotional distress" as "element of damages for breach of a legal duty"); *Temple–Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999) (torts are "breaches of legal duties" (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997))).

[5] Ricky also identifies what he considers to be a fifth element—that "[n]o alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct."  Neither the Supreme Court of Texas nor our Court has called this concept an element of the claim; the concept is instead a legal bar to recovery for IIED, *see, e.g.*, *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 446–47 (Tex. 2004); *Martinez v. English*, 267 S.W.3d 521, 529–31 (Tex. App.—Austin 2008, pet. denied).  We may not review any complaint here based on this legal bar because no such complaint was preserved or adequately briefed.  *See* Tex. R. App. P. 33.1(a), 38.1(i).  Nothing in the record shows that Ricky presented the legal bar to the trial court, and on appeal, aside from describing the legal bar as an element, Ricky's briefing provides no argument and cites no authorities to support a complaint that the IIED claim should be barred because alternative claims were available.

9

216 S.W.3d 788, 796 (Tex. 2006)). "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kroger Tex.*, 216 S.W.3d at 796 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)). So too with acts that are merely "callous, meddlesome, mean-spirited, officious, overbearing, and vindictive," *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817–18 (Tex. 2005), and "[o]ccasional malicious and abusive incidents," *see GTE Sw.*, 998 S.W.2d at 617. "Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Kroger Tex.*, 216 S.W.3d at 796. Unlike "circumstances bordering on serious criminal acts," merely "heinous acts . . . will rarely have merit as intentional infliction claims." *See Creditwatch*, 157 S.W.3d at 818.

But acts amounting to a course of conduct of "harassment, intimidation, and humiliation" plus "daily obscene and vulgar behavior" do meet the standard. *See GTE Sw.*, 998 S.W.2d at 617. Being purposely humiliated and intimidated and repeatedly put in fear of one's physical well-being is more than a mere triviality or annoyance. *See id.* Conduct of this kind when it "becomes a regular pattern of behavior and continues despite the victim's objection and attempts to remedy the situation" is then both "sever[e] and regular[]" and thus enters "the realm of extreme and outrageous conduct." *Id.*

"In determining whether certain conduct is extreme and outrageous, courts consider the context and the relationship between the parties." *Id.* at 612. "The extreme and outrageous character of the conduct may arise from an abuse by the actor of . . . a relation with the other, which gives him . . . power to affect [the other's] interests." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. e (Am. L. Inst. 1965)); *see also Standard Fruit & Vegetable Co. v. Johnson*,

10

985 S.W.2d 62, 65 (Tex. 1998) (Restatement (Second) Section 46 is the basis for IIED claims in Texas). Just because extreme and outrageous conduct may arise from "a troubled marriage" does not put the conduct beyond IIED's reach: "Appellant cites no case law, and we find none, exempting a person from liability for the conduct . . . merely because it occurred in a troubled marriage." *See Castro v. Castro*, No. 13-13-00186-CV, 2014 WL 3802613, at *9 (Tex. App.—Corpus Christi–Edinburg July 31, 2014, pet. dism'd) (mem. op.); *see also Vermillion v. Vermillion*, No. 07-20-00111-CV, 2022 WL 4799019, at *8 (Tex. App.—Amarillo Sept. 30, 2022, no pet.) (mem. op.) (noting that besides case then before the court, "at least two Texas courts of appeals have recognized IIED in a divorce proceeding after *Hoffmann-La Roche* and *Creditwatch*" (citing *Castro*, 2014 WL 3802613, at *12; *Lambert v. Lambert*, No. 05-08-00397-CV, 2009 WL 1493009, at *1 (Tex. App.—Dallas May 29, 2009, no pet.) (mem. op.))). Even so, "there must be evidence of some conduct that takes the dispute outside the scope of an ordinary marital dispute and into the realm of extreme and outrageous conduct." *Ross*, 2004 WL 792317, at *6.

Shannon pleaded her IIED claim by stating that Ricky "engaged in a pattern of extreme and outrageous conduct that caused [her] to suffer severe emotional distress." She argues that to support the claim, she put forward evidence of incidents of Ricky's threatening to kill her, saying that he would take their child away, causing their child to be dismissed from daycare, locking the pantry to prevent Shannon's daughters from opening it, hiding cameras in the home to surveil her, calling her names, overdrafting their joint checking account, withholding community funds, and unexpectedly appearing outside her home when she had possession of their child. The conduct to be evaluated for whether it meets the second element of an IIED claim can be the defendant's entire course of conduct taken as a whole. *See GTE Sw.*, 998 S.W.2d at 615–16 ("When such repeated or ongoing harassment is alleged, the offensive conduct is evaluated as a

11

whole. . . . [W]hen repeated or ongoing severe harassment is shown, the conduct should be evaluated as a whole in determining whether it is extreme and outrageous."); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 81–82 (Tex. App.—El Paso 1998, pet. denied) ("entire course of conduct" was extreme and outrageous even though, "[w]ith the possible exception of the bomb and death threats, no single action of [either defendant] alone . . . rises to the level of" IIED).

The evidence showed the following course of conduct by Ricky during the parties' short marriage. He admittedly threatened to kill her. He threatened to fight her to the death. He told her that he hated her. She believed him about all this and so felt stressed, afraid of losing their child, and "[t]errified and scared." Specifically, hearing that he would fight her to the death made her feel "[t]hat he's actually going to do that at any cost, including financially." A former coworker of Shannon's has heard Ricky "violently yelling" and being aggressive toward Shannon.

He has been physically violent with her. The former coworker has seen "the repercussions on [Shannon's] body of when [Ricky] was physically violent with her." Besides the nightstand incident recounted above, another incident involved the couple's child's car seat. Ricky, Shannon testified, "had [her] against the wall pinned with the car seat and was, like, doing like this (indicating), like, so [she] couldn't get [their child] because he was—it was his barricade so [she] couldn't get the baby." Police responded to the incident.

Shannon testified that Ricky cannot control his anger. He broke her laptop in one such bout of anger. She is afraid of him because he is unpredictable and wants her to obey. If she does not answer his text messages "in the manner that he wants [her] to answer," she testified, then the messages "turn very hostile and very aggressive, and he's going to tell me that he's going to, you know." Both a friend of Shannon's and Shannon's therapist testified that Ricky's behavior toward Shannon changed after Ricky suffered an injury in an ATV accident. The friend has seen

12

Ricky intimidate Shannon, which causes Shannon anxiety. He has shouted at her and called her cruel names like "trash," "slut," and "whore." He treats her poorly in front of their child, including over FaceTime, which for her "is horribly embarrassing" in part because he is "not just harassing towards [her], but he even berates the child during FaceTime."

He has sat in his car outside her home after their separation, including at night, making her "feel like a caged animal, like you can't do anything because you don't know if he's lurking or if he's got a private investigator lurking or someone going through [her] trash even when [she] do[es]n't have the child," and keeping her from "feel[ing] like [she] can live a normal life." A friend of Shannon's thinks Ricky has sat outside Shannon's home about 10 to 15 times. Shannon considers him to have been stalking her. Before the couple's separation, Ricky set up cameras in and around the marital home. At least one of the cameras was unknown to Shannon, according to her. After the separation, he continued to access one or more of the feeds from the cameras, unbeknownst to Shannon.

He has threatened several times to take their child from her. She feels "horrible" when he "would isolate the child from" her:

> I mean, you have an infant child where I'm being screamed at. I'm b[e]ing told that I'm going to take your son away from you. He's trying to—he's trying to alienate me from the child. I mean, what's sad about that is that I don't ever get that time back with my child. That time has been stolen from me. I didn't get to spend my first—the first Christmas with [their child]. I didn't get to enjoy that. That was taken from me.

He has overdrafted their joint account and has denied her access to community funds.

We conclude that the evidence was legally sufficient on this element because reasonable and fair-minded people could conclude that Ricky's entire course of conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

13

and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Hersh*, 526 S.W.3d at 468 (quoting *Kroger Tex.*, 216 S.W.3d at 796).

For factual sufficiency, and thus viewing the entire record, we note that Ricky denied most of what Shannon testified to. He also testified that what Shannon considered to be attacks by him were actually his efforts at self-defense. But because Ricky's and Shannon's testimony conflicted on these topics and the trial court chose to believe her over him, we do not disturb the court's credibility assessment. And although Ricky testified that Shannon had been violent with him as well, instances of violence by Shannon do not eliminate the instances of Ricky's violence, nor do they eliminate any of the rest of his conduct that even if not physically violent still supports an extreme and outrageous course of conduct.

Ricky addresses the evidence about his withholding community funds by pointing out that Shannon could always access her own, substantial income and that she withheld that income—itself community funds—from him and did not help him with post-separation living expenses. But we do not view these matters as outweighing all the rest of Ricky's course of conduct such that the implied finding on this element was manifestly unjust. Ricky also argues against the evidence of his threat to kill Shannon: "Shannon accuses Ricky of threatening to kill her, but she admits to arguing with Ricky and using curse words[,] and testimony indicates that she used racially charged language when arguing with Ricky." But this too does not outweigh the rest of his conduct such that the implied finding was manifestly unjust.

We conclude that the evidence of extreme and outrageous conduct was not too weak to support a finding on that element and that the implied finding is not so against the overwhelming weight of the evidence as to be manifestly unjust. *See Ross*, 2004 WL 792317, at *6.

14

b.     Severe emotional distress

Next, Ricky challenges the implied findings on the third and fourth elements—that his conduct caused Shannon emotional distress that was severe. *See Hersh*, 526 S.W.3d at 468. "Emotional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *GTE Sw.*, 998 S.W.2d at 618; *accord Ross*, 2004 WL 792317, at *8. "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *GTE Sw.*, 998 S.W.2d at 618; *accord Ross*, 2004 WL 792317, at *8. "The intensity and duration of the distress are factors to be considered in determining its severity." *Ross*, 2004 WL 792317, at *8. "Mere worry, anxiety, vexation, embarrassment, or anger are not enough[,] and there must be a high degree of mental pain and distress, but evidence of a physical manifestation is not required." *Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 223 (Tex. App.—Austin 2017, no pet.). Evidence about the severity of emotional distress can come from IIED plaintiffs themselves, from those close to the plaintiffs, and from professionals who have assessed the plaintiffs. *See, e.g.*, *GTE Sw.*, 998 S.W.2d at 618–19; *Moyer v. Moyer*, No. 03-03-00751-CV, 2005 WL 2043823, at *13 (Tex. App.—Austin Aug. 26, 2005, no pet.) (mem. op.); *Ross*, 2004 WL 792317, at *9–10; *Escalante v. Koerner*, 28 S.W.3d 641, 646–47 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied).

Shannon's evidence of her severe emotional distress included testimony by her therapist. Shannon began seeing the therapist about three months before the couple separated. The therapist explained that Shannon feared for her own and her children's safety from Ricky and had a panic attack as a result. The symptoms included "becom[ing] flushed, her heart would start racing, . . . rapid breathing," and feelings of anxiety and fear. Shannon "felt very alone" and "isolated," "as though—because of the way that she was being treated in the marriage and after

15

the marriage was over, she felt like none of her friends or family really were able to support her because they were afraid." She was depressed. The therapist performed "[e]ye movement desensitization reprocessing" therapy (EMDR) with her, which is used to treat PTSD, and has continued EMDR at least through trial, which took place about a year and ten months after Shannon began seeing the therapist. The therapist used EMDR for the fallout from Ricky's assault on Shannon.[6] Shannon and her therapist undertook "safety planning" and cognitive behavioral therapy because of Ricky's having put cameras in the home.

Shannon's evidence also included her own reports of how Ricky's extreme-and-outrageous course of conduct affected her. She felt "[t]errified and scared," stressed, afraid of losing their child, degraded, harassed, unsafe, and "like a caged animal" because Ricky would show up at her home. During the month that the couple separated, she was diagnosed with an anxiety disorder. She had never before seen any therapist for anxiety. She began seeing her therapist because of anxiety from the marriage's having become "hostile and volatile." She suffered physical symptoms from the stress—shortness of breath, tachycardic heart rate, light-headedness, chest tightness, and the panic attack. A friend of hers testified about her panic attacks, and the former coworker testified that Shannon suffers shortness of breath and shaking from Ricky's "being sneaky" during this suit.

We conclude that the evidence was legally sufficient to support findings on the third and fourth elements because reasonable and fair-minded people could conclude that Shannon suffered "highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry . . . so severe that no reasonable person could be expected to endure it."

---

[6] The therapist also testified that she used EMDR to address "[s]tuff with family," but the record does not clarify what this means.

*See GTE Sw.*, 998 S.W.2d at 618; *Ross*, 2004 WL 792317, at *8. She suffered "stress, anxiety, and depression"; sought treatment; and was treated with a method used to treat PTSD. *See GTE Sw.*, 998 S.W.2d at 618. Ricky's course of conduct gave rise to the reasonable inference that he was controlling, and the course of conduct plus the testimony about when Shannon first sought therapy support the reasonable inference that Ricky caused Shannon's distress, depression, and PTSD-like symptoms. *See Ross*, 2004 WL 792317, at *9–10. Her therapist's, friend's, and coworker's testimony supported the necessary findings. *See id.* The therapist helped her make plans for her personal safety. *See id.* at *9.

As for factual sufficiency, Ricky argues that "Shannon testified that the conduct merely stressed her out"—false—"and stated she had been diagnosed with an anxiety disorder and had panic attacks"—true. He thus argues that she could not have been sufficiently distressed because she otherwise "maintained her employment, took care of her children, reconciled with [Ricky], went on vacation, and had a relationship with another person." These arguments suggest that Ricky believes the standard for severe emotional distress requires something akin to a complete debilitation from carrying out the normal tasks of life. But that is not the standard— Shannon should not be expected to endure what the evidence showed, *see GTE Sw.*, 998 S.W.2d at 618; *Ross*, 2004 WL 792317, at *8, in part because she needed a professional's intervention to cope. Plus, a review of authorities on these elements shows that evidence of near-complete debilitation has not been required. *See generally Morgan v. Anthony*, 27 S.W.3d 928, 931 (Tex. 2000) (per curiam); *GTE Sw.*, 998 S.W.2d at 618; *Lambert*, 2009 WL 1493009, at *4; *Ross*, 2004 WL 792317, at *9–10; *Escalante*, 28 S.W.3d at 646–47. We thus conclude that the evidence supporting the implied findings on the third and fourth elements is not too weak to support the

17

findings and the findings are not so against the overwhelming weight of the evidence as to be manifestly unjust. *See Ross*, 2004 WL 792317, at \*6.

### c. Mental state

Finally, Ricky challenges the implied finding on the mental-state element. A reckless mental state suffices for IIED. *See Hersh*, 526 S.W.3d at 468; *Hoffmann–La Roche*, 144 S.W.3d at 445. "An actor is reckless when he 'knows or has reason to know . . . of facts which create a high degree of risk of . . . harm to another, and deliberately proceeds to act, or fails to act, in conscious disregard of, or indifference to that risk.'" *Twyman*, 855 S.W.2d at 624 (op. of Cornyn, J.) (quoting Restatement (Second) of Torts § 500 cmt. a (Am. L. Inst. 1965)); *accord id.* at 627 (concurring and dissenting op. of Phillips, C.J.); *id.* at 630 (concurring and dissenting op. of Hecht, then-J., joined by Enoch, J.); *see Ross*, 2004 WL 792317, at \*8; *see also Standard Fruit & Vegetable*, 985 S.W.2d at 65–66 ("In *Twyman*, we specifically adopted the recklessness standard . . . and defined it generally." (citing 855 S.W.2d at 624 (op. of Cornyn, J.)). The Supreme Court of Texas has refined the required mental state for IIED claims by holding that IIED "is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct"—that is, "only when the tortfeasor desired or anticipated that the plaintiff would suffer severe emotional distress." *See Standard Fruit & Vegetable*, 985 S.W.2d at 67; *accord Ross*, 2004 WL 792317, at \*8. Evidence of the actor's mental state "may be inferred from the circumstances and the conduct of the actor, not just from the overt expressions of intent by the actor." *Ross*, 2004 WL 792317, at \*8.

The evidence showed "numerous incidents, over the term of the parties' marriage, where [Ricky] mentally and physically abused" Shannon and the emotional toll it took on her

18

and of the physical bruising it caused her. *See Toles v. Toles*, 45 S.W.3d 252, 260 (Tex. App.—Dallas 2001, pet. denied); *see also Cortez ex rel. Est. of Puentes v. HCCI–San Antonio, Inc.*, 131 S.W.3d 113, 121 (Tex. App.—San Antonio 2004) (evidence supported findings on IIED mental state in part because of evidence of tortfeasor's physical assault, causing victim to be scared of tortfeasor), *aff'd*, 159 S.W.3d 87 (Tex. 2005). Ricky's words and acts alone "indicate that they were done knowingly and intentionally." *See Morgan*, 27 S.W.3d at 931. The evidence thus allowed reasonable and fair-minded people to conclude that his course of conduct was taken in conscious disregard of or indifference to a high degree of risk of severe emotional distress to Shannon and with the anticipation that she would suffer severe emotional distress. *See Standard Fruit & Vegetable*, 985 S.W.2d at 67; *Twyman*, 855 S.W.2d at 624 (op. of Cornyn, J.); *Ross*, 2004 WL 792317, at *8. The trial court as factfinder "was free to disregard [Ricky]'s protestations that no harm was intended and to draw inferences necessary to establish his intent." *See Motsenbocker v. Potts*, 863 S.W.2d 126, 136 (Tex. App.—Dallas 1993, no writ) (citing *Twyman*, 855 S.W.2d at 623 (op. of Cornyn, J.)). We conclude that the evidence was legally and factually sufficient to support the implied finding on the mental-state element and overrule this portion of Ricky's first issue.

### B. *The evidence was sufficient to support the finding of family violence.*

The findings and conclusions state that Ricky "has committed family violence," and he challenges that ruling for legal and factual sufficiency. "Family violence" includes:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

19

Tex. Fam. Code § 71.004(1); *see also id.* § 101.0125 (applying this definition to SAPCRs). As we concluded above, the evidence showed that Ricky physically assaulted Shannon, leading to bruises up and down her back, and threatened to kill her. The evidence was legally and factually sufficient to support the family-violence finding. *See King v. King*, No. 03-22-00329-CV, 2023 WL 3873496, at *12 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.); *Lummus v. Lummus*, No. 04-22-00350-CV, 2023 WL 242730, at *3 (Tex. App.—San Antonio Jan. 18, 2023, no pet.) (mem. op.); *Colvin v. Colvin*, No. 03-03-00234-CV, 2004 WL 852266, at *7 (Tex. App.—Austin Apr. 22, 2004, no pet.) (mem. op.). We overrule this portion of Ricky's first issue.

### C.    *We are to presume a malice finding, for which there was sufficient evidence.*

Finally within his first issue, Ricky challenges the $132,000 damages award for the assault and IIED claims.[7] He argues that the trial court's legal conclusions and fact findings cannot support the award. Specifically, he points out that (a) to recover exemplary damages, Shannon needed to prove by clear and convincing evidence that the harm for which she sought exemplary damages resulted from, as relevant here, malice, *see* Tex. Civ. Prac. & Rem. Code § 41.003(a)(2), and (b) no malice finding was made by the trial court. He also argues that any presumed malice finding was not supported by legally sufficient evidence.[8]

---

[7] The judgment and the later findings and conclusions conflict over the $132,000 award. Though the judgment calls the award a "declaratory judgment" for "exemplary damages," in the findings and conclusions the court ruled that "a portion of the 'exemplary damages' awarded . . . include[s] compensatory damages that are more than nominal." *Cf. City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex. App.—San Antonio 1998, pet. denied) ("Findings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between them."); *accord In re Marriage of Edwards*, 79 S.W.3d 88, 100–01 (Tex. App.—Texarkana 2002, no pet.) (same, in divorce appeal).

[8] Ricky has inadequately briefed factual sufficiency. *See* Tex. R. App. P. 38.1(i). The most he does to brief it is in the section headings for his arguments under this sub-issue. The

Because the trial court sent findings and conclusions, the lack of an express malice finding is governed by Rule of Civil Procedure 299. As referenced above, when a court that has sent findings and conclusions makes no finding on any element of a ground of recovery, then the appellate court cannot presume that the trial court's judgment is supportable on any implied findings on that ground of recovery. *See* Tex. R. Civ. P. 299. But if the findings do include a finding on at least one element of a ground of recovery, then "omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." *Id.* A party's failure to request additional or amended findings waives the party's right to complain on appeal about any deemed findings not so requested.[9] *See* Tex. R. Civ. P. 298; *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

---

headings say that the "findings are legally and factually insufficient to support" the damages. But he cites no factual-sufficiency authorities; does not mention the factual-sufficiency standards; and does not present argument weighing the evidence, including not citing any part of the record for competing evidence to weigh in a factual-sufficiency review. Instead, he argues on this topic that Shannon adduced no evidence of malice. Factual sufficiency is thus inadequately briefed. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732–33 (Tex. 2020) (per curiam) (applicable standards); *N & A Props., Inc. v. PH Steel, Inc.*, 656 S.W.3d 556, 570 (Tex. App.—El Paso 2022, no pet.) (briefing waiver like that here); *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 912 (Tex. App.—Dallas 2014, pet. denied) (same).

[9] Though requesting a finding against oneself seems counterintuitive, such a request is one way to show that an omitted finding was omitted deliberately and not merely inadvertently (findings omitted deliberately cannot be presumed) and the only way to activate Rule 298's provision that "[n]o findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions." *See Vickery v. Commission for Law. Discipline*, 5 S.W.3d 241, 252–58 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *see also Howe v. Howe*, 551 S.W.3d 236, 248 (Tex. App.—El Paso 2018, no pet.) ("'[W]hen the court's findings of fact include one or more elements of a claim or defense, but omits others, the omitted elements will be presumed (if supported by the evidence) unless a party timely files a request for additional findings of fact asking the court to make findings regarding the omitted elements. It seems counterintuitive that you should ask the court to make a finding against you, but it is necessary in order to attack that element on appeal.' . . . [T]he failure by a party to request additional amended findings or conclusions waives the party's right to complain on appeal about the presumed finding." (internal citation omitted) (quoting Hon. Tracy Christopher, *Findings of*

Because Ricky did not request additional or amended findings as to any omitted elements about the damages award, whether we can uphold the damages award turns on whether a finding of malice can be presumed under Rule 299. We must decide whether express findings on "one or more elements" of the relevant ground of recovery were made by the court and whether the evidence supports the omitted malice finding.[10] *See* Tex. R. Civ. P. 299.

The relevant Rule 299 "ground of recovery" here is either the assault claim or the IIED claim, recovery for either or both of which the court awarded the $132,000. A request for exemplary damages is not a claim unto itself; it is an item of damages recoverable when liability is established for an underlying claim (assuming other requirements are met). *See Robbins v. Payne*, 55 S.W.3d 740, 747 (Tex. App.—Amarillo 2001, pet. denied) ("[T]here is no independent cause of action for exemplary damages. They are simply an element of damages recoverable under a cause of action."); *accord Lyden v. Aldridge*, No. 02-23-00227-CV, 2023 WL 6631528, at *3 n.4 (Tex. App.—Fort Worth Oct. 12, 2023, no pet.) (mem. op.) (collecting authorities). Thus, absent a proper challenge by the appellant in the trial court, a finding on one of the elements of the underlying claim activates Rule 299 to supply by presumption any omitted findings necessary to support an exemplary-damages award. *See Marlow v. Medlin*, 558 S.W.2d 933, 938 (Tex. App.— Waco 1977, no writ) (presuming omitted malice finding necessary to support exemplary-damages

*Fact and Conclusions of Law—Do I Have To?*, 76 The Advoc. 44, 46 (Fall 2016))), *quoted in 12636 Rsch. Ltd. v. Indian Bros., Inc.*, No. 03-19-00078-CV, 2021 WL 417027, at *6 (Tex. App.— Austin Feb. 5, 2021, no pet.) (mem. op.).

[10] The evidence review here is only for legal sufficiency because Ricky has not adequately raised factual sufficiency. *See In re J.F.C.*, 96 S.W.3d 256, 276 (Tex. 2002) (stating that "[t]he inquiry in this appeal is limited to whether there is *legally* sufficient evidence to support the trial court's express or deemed finding" because appealing parties had not raised factual sufficiency in court of appeals or Supreme Court).

award because record "contain[ed] express findings on other elements of plaintiff's fraud action"); *see also Durand v. Moore*, 879 S.W.2d 196, 202 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Nacol v. Metallic Dev. Corp.*, 614 S.W.2d 172, 174–75 (Tex. App.—Fort Worth 1980, writ dism'd); *cf. Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 110 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (concluding under parallel rule for jury trials that "[i]n light of the jury's exemplary damages awards . . . for the assault . . . , a finding by clear and convincing evidence that the harm . . . resulted from fraud, malice, or gross negligence is deemed . . . if it is supported by evidence").

Therefore, just as we concluded above that implied findings on the elements of the underlying assault and IIED claims arise because the findings and conclusions address damages for those claims, we likewise may presume any omitted findings necessary to support exemplary damages because the findings and conclusions address at least one of the elements of the underlying liability claims. Therefore, based on the court's findings on damages, we presume a malice finding under Rule 299 if the evidence supported malice.

The evidence was legally sufficient to support the presumed finding of malice. The appellate standards for legal-sufficiency review here are heightened because malice for exemplary damages must be proven by clear and convincing evidence. *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004); *see* Tex. Civ. Prac. & Rem. Code § 41.003(a). Under those standards:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts

in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

*Southwestern Bell Tel.*, 164 S.W.3d at 627 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

Malice for purposes of exemplary damages "means a specific intent by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code § 41.001(7). The specific intent to be proven is either that the actor desires to cause the consequences of his act or that he believes the consequences are substantially certain to result from it. *Gilbreath v. Horan*, 682 S.W.3d 454, 508 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *Tri-County Elec. Coop., Inc. v. GTE Sw. Inc.*, 490 S.W.3d 530, 556 (Tex. App.—Fort Worth 2016, no pet.). The intended injury to be proven must be "'independent and qualitatively different' from the compensable harms associated with the underlying causes of action." *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 867 (Tex. 2017) (quoting *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 662 (Tex. 2012)). This means that legally sufficient evidence of malice requires evidence of more than "the tort itself" that underlies the request for exemplary damages. *See id.* Intended injuries that have qualified as "substantial" have been as mild as missing work to drive a spouse to their job because the defendant's conduct caused the loss of the spouse's car. *See Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 766 (Tex. App.—Dallas 2008, no pet.).

24

Exemplary damages are available for assault claims and separately for IIED claims. *See American Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 344 (Tex. App.—Houston [14th Dist.] 1991, no writ) (IIED); *Nagel Mfg. & Supply Co. v. Ulloa*, 812 S.W.2d 78, 80–82 (Tex. App.—Austin 1991, writ denied) (assault). In terms of her underlying tort claims then, because an award of exemplary damages is sustainable on Shannon's IIED claim alone without need of recourse to her assault claim as well, or vice versa, the evidence of assaultive conduct—recounted above—suffices to show Ricky's specific intent to cause Shannon substantial injury independent and qualitatively different from the compensable harms associated with the IIED claim. *See Stroud Prod.*, 405 S.W.3d at 812 (because award was sustainable on one theory, court of appeals need not have reached issue of defendant's liability for same award but under different theory); *see also Shumate v. Berry Contracting, L.P.*, No. 13-19-00382-CV, 2021 WL 2978713, at *12 (Tex. App.—Corpus Christi–Edinburg July 15, 2021) (mem. op.) (applying similar reasoning to exemplary-damages award), *rev'd on other grounds*, __ S.W.3d __, 2024 WL 1819649 (Tex. Apr. 26, 2024) (per curiam); *Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 817 (Tex. App.—Corpus Christi–Edinburg 1988, no writ) (same).

The evidence of Ricky's assaultive conduct against Shannon included the nightstand and car-seat incidents recounted above and his threatening to kill her and fight her to the death. Thus, there is legally sufficient evidence of malice when viewing the award as one of exemplary damages for the IIED claim. *See Durban v. Guajardo*, 79 S.W.3d 198, 209 (Tex. App.—Dallas 2002, no pet.) (legally sufficient evidence of malice given evidence of assaultive conduct when plaintiff recovered on underlying claim of IIED); *see also East Tex. Med. Ctr. EMS v. Nieves*, No. 10-09-00055-CV, 2010 WL 5419003, at *3 (Tex. App.—Waco Dec. 29, 2010, no pet.) (mem. op.) (assaultive conduct supporting malice). All the conduct that we recounted

25

above under the assault and IIED claims supports a finding that Ricky, by word and deed, targeted Shannon to specifically and directly harm her physically and emotionally (or harm her indirectly by upsetting her daughters by locking them out of the pantry). *See Bennett v. Reynolds*, 315 S.W.3d 867, 871–72 (Tex. 2010) (evidence of malice in the form of evidence that defendant's harming plaintiff was intended and not accidental and that defendant's harm constituted criminal conduct); *Richards v. Tebbe*, No. 14-13-00413-CV, 2014 WL 2936425, at *6 (Tex. App.—Houston [14th Dist.] June 26, 2014, no pet.) (mem. op.) (evidence of malice in the form of evidence of defendant's deceptive conduct and assaultive conduct intended to keep plaintiff from being able to fight back).

In all then, the evidence is legally sufficient to support the omitted malice finding that Ricky complains about. We thus overrule this last part of his first issue.[11]

### III. We sustain in part and overrule in part Ricky's issue about the award of retroactive child support, reversing only the money judgment awarded.

In his second issue, Ricky advances three separate challenges to the court's award of retroactive child support.[12] The court in its decree ordered that Ricky "is obligated to pay and shall pay to Shannon . . . retroactive child support of . . . $1,840.00[] per month beginning April 1,

---

[11] Ricky adds a new issue in his appellate reply brief—that the damages award violates the "rule that requires actual damages to be found prior to an award of punitive damages." *Cf. Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985). But we may not reverse a judgment based on issues raised by appellants only in their reply briefs. *See Williams v. Walgreen Co.*, No. 03-09-00068-CV, 2010 WL 4053703, at *4 n.4 (Tex. App.—Austin Oct. 12, 2010, no pet.) (mem. op.). In any event, Ricky's arguments under this late-raised issue do not account for the court's express ruling in its findings and conclusions that "the 'exemplary damages' awarded . . . include compensatory damages that are more than nominal."

[12] There is a distinction between (a) child support awarded and calculated retroactively at the inception of the award and (b) retroactive modifications of preexisting child-support awards. *See In re J.G.Z.*, 963 S.W.2d 144, 146 (Tex. App.—Texarkana 1998, no pet.); *compare* Tex. Fam. Code § 154.009, *with id.* § 156.401. This case involves the former.

2020, through October 31, 2021." Separate from this, the decree also awarded Shannon a money judgment for the same retroactive child support. Then in its findings and conclusions the court noted that provisions of Family Code chapter 154 supported the court's awards of child support and ruled that the "award of retroactive child support as an obligation of [Ricky] as set forth in the Final Decree of Divorce is in the best interest of the child." (Italics removed.)

A. *The oral comments by the trial court that Ricky's plenary-power arguments depend on did not constitute an oral rendition of judgment.*

In the first portion of his second issue, Ricky maintains that the trial court had no power to award retroactive child support in the final decree because, he says, the court lost plenary power over its judgment by the time it made the award because the court had orally rendered judgment much earlier. Ricky's arguments depend on viewing the court's statements made on the last day of the bench trial after the close of the evidence as the court's judgment, rendered orally. Relevant to retroactive child support, the court said:

> Okay. This *will be* the order of the court. . . . [Ricky] *will pay* guideline child support as argued—or as just—[Shannon's attorney] just spit out a number, but I don't remember what it is—I didn't write it down fast enough—but calculated at the guideline support as requested by [Shannon].

(Emphases added.) Ricky correctly points out that at neither this point nor any other on the last day of trial after the evidence closed did the trial court mention retroactive child support.

A trial court may orally render its judgment, *see State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015), but only if certain circumstances are true. To render orally, the court must "announce[] rendition as a present act and not as an 'intention to render judgment in the future.'" *Id.* (quoting *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam)). "The words used by the trial court must clearly indicate the intent to render judgment at the time the

27

words are expressed." *S & A Rest.*, 892 S.W.2d at 858; *see also Baker v. Bizzle*, 687 S.W.3d 285, 292 (Tex. 2024) ("Words reflecting the judge's present declaration of a decision are necessary . . . to effect the rendition of a judgment."). Thus, a court's statements about the judgment it is "going to" render or that "will be" rendered do not render a judgment. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 582–83 (Tex. 2018) (per curiam); *Able Cabling Servs., Inc. v. Aaron–Carter Elec., Inc.*, 16 S.W.3d 98, 100–01 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The comments that Ricky's arguments depend on state merely what "will be" the court's rulings. Because the comments thus are not "a present act" and were instead merely "an 'intention to render judgment in the future,'" *see Naylor*, 466 S.W.3d at 788 (quoting *S & A Rest.*, 892 S.W.2d at 858), Ricky's arguments from the timing of the court's first mention of awarding retroactive child support must fail. We overrule this portion of his second issue.

### B. *There is no abuse of discretion warranting reversal in the trial court's not having detailed any findings under Family Code section 154.131(b)(1)–(4).*

In the next portion of his second issue, Ricky maintains that the trial court refused to consider the factors in Family Code section 154.131(b)(1)–(4) when making the award of retroactive child support because the court detailed no findings on those factors in its findings and conclusions. "Section 154.131 vests a trial court with discretion to determine whether to award retroactive child support and the amount of that support." *In re E.C.*, No. 13-04-00002-CV, 2005 WL 1244615, at *2 n.8 (Tex. App.—Corpus Christi–Edinburg May 26, 2005, no pet.) (mem. op.); *see also* Tex. Fam. Code § 154.009 (authorizing awards of retroactive child support).

We review child-support awards for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). "A court abuses its discretion if its decision is

arbitrary, unreasonable, and without reference to any guiding rules or principles." *Norman v. Martin*, No. 03-17-00704-CV, 2019 WL 1388719, at \*5 (Tex. App.—Austin Mar. 28, 2019, no pet.) (mem. op.). "A trial court does not abuse its discretion as long as some evidence of a probative nature exists to support the court's decision, and we generally will not find an abuse of discretion when the trial court bases its decision on conflicting evidence." *Id.* (citation omitted).

Section 154.131(b) provides that

> [i]n ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:
>
> > (1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity;
> >
> > (2) the obligor had knowledge of his paternity or probable paternity;
> >
> > (3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and
> >
> > (4) the obligor has provided actual support or other necessaries before the filing of the action.

Tex. Fam. Code § 154.131(b)(1)–(4). "Section 154.131(b) does not bind the trial court to the listed factors in determining retroactive child support but is merely intended to guide the trial court in determining the amount of retroactive child support." *Bunts v. Williams*, No. 01-17-00643-CV, 2019 WL 2220109, at \*6 (Tex. App.—Houston [1st Dist.] May 23, 2019, no pet.) (mem. op.) (citing *In re J.H.*, 264 S.W.3d 919, 924–25 (Tex. App.—Dallas 2008, no pet.)). If a court was presented with conflicting evidence, then the court's decision under the statute in awarding retroactive child support is not an abuse of discretion. *See Norman*, 2019 WL 1388719, at \*6 (citing *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)); *In re J.M.M.*, 549 S.W.3d 293, 300 (Tex. App.—El Paso 2018, no pet.); *J.H.*, 264 S.W.3d at 925.

Ricky provides no authority—and we have found none—providing that Section 154.131(b) sets forth required findings for awards of retroactive child support. The statute does not set forth required findings because of its plain language, *see* Tex. Fam. Code § 154.131(b) (providing for merely what court must "consider"), and given the reasoning of *Bunts* and *J.H.*

Moreover, "the failure to make additional findings does not require a reversal if the record indicates [appellant] did not suffer injury." *See Bunts*, 2019 WL 2220109, at *11. Ricky "must show the trial court's refusal to file the requested additional findings caused the rendition of an improper judgment," and "[i]f the refusal to file additional findings did not prevent [him] from adequately presenting his argument on appeal, there is no reversible error." *See id.* "Generally, an appellant is harmed if, under the circumstances of the case, he must guess at the reason the trial court ruled against him." *See id.*

Applying all these principles here, we first note that the parties presented the trial court with evidence from which it could consider two of Section 154.131(b)'s required considerations—imposing potential undue financial hardship on Ricky and whether he had provided his child with "actual support or other necessaries before the filing of the action." *See* Tex. Fam. Code § 154.131(b)(3)–(4). There was evidence about Ricky's income and debts and about what Ricky had done to care for his child before he filed this suit. Plus, Ricky does not dispute the *amount* of retroactive child support awarded. *See In re C.J.C.*, No. 13-15-004151-CV, 2016 WL 8919847, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2016, no pet.) (mem. op.) (citing case for its "conclu[sion] that the trial court did not abuse its discretion in finding that father was capable of paying retroactive child support when father presented no specific evidence demonstrating financial hardship" (citing *In re A.B.*, 368 S.W.3d 850, 856 (Tex. App.—Houston [14th Dist.] 2012, no pet.))).

As for Section 154.131(b)'s subsections about notification of paternity and whether the obligor knew about his paternity, *see* Tex. Fam. Code § 154.131(b)(1)–(2), Ricky at all times relevant pleaded that he was the child's father. The evidence from trial is undisputed that Ricky is his child's father. And nothing in the record suggests that either Ricky or Shannon is challenging Ricky's paternity or whether he has known that he is the child's father. *See id.*

In all then, there was evidence from which the trial court could undertake the considerations called for by Section 154.131(b)(1)–(4), *see Norman*, 2019 WL 1388719, at *6 (citing *K.R.P.*, 80 S.W.3d at 674); *J.M.M.*, 549 S.W.3d at 300; *J.H.*, 264 S.W.3d at 925, and the lack of any findings under subsections (b)(1) or (b)(2) about Ricky's knowledge of his paternity or of Shannon's notifying Ricky about his paternity cannot have harmed Ricky, *see Bunts*, 2019 WL 2220109, at *11. Nothing in the record suggests that the trial court refused to consider anything that Section 154.131(b) required it to consider. There is thus no abuse of discretion warranting reversal in the court's not having detailed findings under Section 154.131(b) in its findings and conclusions. *See In re S.M.-R.*, No. 02-15-00287-CV, 2016 WL 6900902, at *5 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.) (concluding that award of retroactive child support was not an abuse of discretion "[b]ecause Mother does not analyze the evidence under [the Section 154.131(b)] factors or challenge the trial court's exercise of discretion under them, and because at least some evidence of probative character supports the trial court's decision"). We overrule this portion of Ricky's second issue.

### C. *The trial court erred by awarding a money judgment for the retroactive child support on top of its mere award of retroactive child support in the decree.*

In the remaining portion of his second issue, Ricky maintains that the trial court erred by rendering a money judgment in Shannon's favor in its decree for the retroactive child

support otherwise awarded by the decree. The court, beyond ordering that Ricky pay Shannon "retroactive child support of . . . $1,840.00[] per month beginning April 1, 2020, through October 31, 2021," awarded Shannon a money judgment of $34,960 for this retroactive child support.[13] Ricky argues that "[a]n award of retroactive child support under Chapter 154 of the Texas Family Code is not an enforcement action under Chapter 157 for which a judgment for unpaid retroactive child support may be obtained."

Ricky is correct that the trial court erred by awarding a money judgment for the retroactive child support on top of its mere award of retroactive child support in the decree. Child-support-enforcement proceedings under Family Code chapter 157 are "entirely different proceeding[s]" from those for first securing child-support awards under Family Code chapter 154. *See Ochsner v. Ochsner*, 517 S.W.3d 717, 722 & n.21 (Tex. 2016). Chapter 157 authorizes money judgments for unpaid child support. *See generally* Tex. Fam. Code §§ 157.261–.269. But Chapter 154 authorizes money judgments in only much more limited circumstances—when a child-support obligor has died. *See id.* § 154.015; *see also generally id.* §§ 154.001–.309. Nothing in the record suggests that Shannon sought the retroactive child support via a Chapter 157 enforcement proceeding; instead, the statutory bases for the awards of child support recited in each of the final decree, the proposed decree that Shannon attached to her Motion to Enter, and the court's findings and conclusions were solely from Chapter 154.

When interpreting statutes, "[w]e look to the statutory scheme as whole . . . , not to snippets taken in isolation." *See Ochsner*, 517 S.W.3d at 721 & n.17 (citing *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (plurality op.)). Thus, not only do we interpret

---

[13] The $1,840 monthly amount when multiplied by the 19 months of April 2020 through October 2021, inclusively, yields $34,960.

Chapter 154 as providing for entirely different kinds of proceedings than what Chapter 157 provides for, *see Ochsner*, 517 S.W.3d at 722 & n.21, but we also interpret the Legislature's choice to specify the few circumstances in which money judgments are available under Chapter 154 as excluding other circumstances not so specified, *see TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 710 (Tex. 2023) ("[I]n law the expression of one thing often implies the exclusion of other things." (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020))); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). This suit does not present the circumstances under which Chapter 154 authorizes child-support money judgments, but Chapter 154 is the only asserted basis for the money judgment for retroactive child support. The trial court thus erred by awarding the money judgment for the retroactive child support on top of the mere award of the same retroactive child support in the decree. We thus sustain this portion of Ricky's second issue, reverse the portion of the decree awarding a money judgment for the retroactive child support, and render judgment that Shannon take nothing on her request for a money judgment for the retroactive child support. We do not otherwise alter the portion of the decree that merely awarded retroactive child support.

IV.     **The award of attorneys' fees does not create a double recovery and does not make the court's overall just-and-right division of the community estate unjust.**

In his third issue, Ricky maintains that the attorneys'-fees award, as part of or at least as it relates to the just-and-right division of the parties' community estate, must be reversed. The decree awards Shannon $58,538.42 in attorneys' fees and orders that the amount be satisfied out of the equalization payment that the decree otherwise orders Shannon to pay to Ricky to carry

33

out the just-and-right division. The equalization payment thus would have been $58,538.42 greater were it not for the fees award, and in this way the fees award is a part of or is at least related to the just-and-right division. In discrete subparts of this issue, Ricky argues that the fee award (1) creates a double recovery when compared with the $132,000 awarded for the assault and IIED claims and (2) makes the court's division of the community estate unjust. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981) ("[A] decree that the husband pay all of the wife's attorney's fees may be to award him less of the community estate . . . , but that alone does not condemn it. The attorney's fee is but a factor to be considered . . . in making an equitable division . . . , considering the conditions and needs of the parties and all of the surrounding circumstances." (quoting *Carle v. Carle*, 234 S.W.2d 1002, 1005 (Tex. 1950))).

"The trial court has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown." *Id.* at 698; *accord id.* at 700 ("Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse."). "In exercising its discretion the trial court may consider many factors and it is presumed that the trial court exercised its discretion properly." *Id.* at 699. "One who complains of the way the trial court divided the community property must be able to show from the evidence in the record that the *overall division* is so unjust and unfair as to constitute an abuse of discretion." *Gupta v. Gupta*, No. 03-09-00018-CV, 2010 WL 2540487, at *6 (Tex. App.—Austin June 24, 2010, no pet.) (mem. op.) (citing *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ)). We can resolve both subparts of this issue by reviewing the evidence supporting certain permissible factors to support the just-and-right

division.[14] *See Murff*, 615 S.W.2d at 698–700 (identifying factors that courts may consider when making just-and-right divisions).

"When, as here, a tort action is tried with the divorce, the court must avoid awarding a double recovery." *Ross*, 2004 WL 792317, at *2 (citing *Twyman*, 855 S.W.2d at 625 (op. of Cornyn, J.); *Toles*, 45 S.W.3d at 264). "A spouse should not be allowed to recover tort damages and a disproportionate division of the community estate based on the same conduct." *Id.* (citing *Twyman*, 855 S.W.2d at 625 (op. of Cornyn, J.); *Toles*, 45 S.W.3d at 264–65). "The court may still award a disproportionate division of property; however, it must be for reasons other than the tortious conduct." *Id.* (citing *Twyman*, 855 S.W.2d at 625 (op. of Cornyn, J.); *Toles*, 45 S.W.3d at 265). "Moreover, recovery for personal injuries of a spouse for intentional infliction of emotional distress is not part of the marital estate subject to division by the court; such a recovery does not add to the marital estate." *Id.* (citing *Twyman*, 855 S.W.2d at 625 n.20 (op. of Cornyn, J.); *Toles*, 45 S.W.3d at 265). But even when a divorce judgment awards the same party both a disproportionate just-and-right division and a recovery of damages in tort, if the finding that the division is just and right could have been supported by evidence of permissible factors beyond the conduct that led to the tort recovery, then there is no double recovery. *See id.* at *4.

*Ross* identifies "just and right" as the finding to be made by the trial court to support its division of the community estate and the factors or considerations from *Murff* and elsewhere not as independently required findings but as simply evidentiary matters that may support a just-and-right finding. *See id.*; *accord Prague v. Prague*, 190 S.W.3d 31, 35 (Tex. App.—Dallas

---

[14] As far as Ricky's arguments under this issue depend on comments made by the trial court instead of on its findings and conclusions, we look only to the findings and conclusions. *See Leax v. Leax*, 305 S.W.3d 22, 35 n.4 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Rutledge v. Staner*, 9 S.W.3d 469, 470 (Tex. App.—Tyler 1999, pet. denied).

2005, pet. denied); *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also* Tex. Fam. Code § 7.001 ("GENERAL RULE OF PROPERTY DIVISION. In a decree of divorce . . . , the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."). The trial court here made the necessary just-and-right finding. Because it did so, and no matter whether the evidentiary considerations that support a just-and-right finding are themselves needed in the findings, we must imply any findings on those considerations as necessary to support the decree. We must do so because after the court sent its findings and conclusions, Ricky did not request additional or amended findings under Rule of Civil Procedure 298. Because he did not, we imply any findings necessary to support the just-and-right division. *See Campos v. Campos*, 388 S.W.3d 755, 758–59 (Tex. App.—El Paso 2012, no pet.); *Hailey v. Hailey*, 176 S.W.3d 374, 382 n.8, 383–84 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *cf. Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *1–2 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *Lettieri v. Lettieri*, 654 S.W.2d 554, 556 (Tex. App.—Fort Worth 1983, writ dism'd); *Davis v. Travis Cnty. Child Welfare Unit*, 564 S.W.2d 415, 416 (Tex. App.—Austin 1978, no writ). We review those implied findings for whether they are supported by the evidence.[15] *See Ross*, 2004 WL 792317, at *4.

   The evidence here showed the following permissible evidentiary considerations to support the court's just-and-right finding to support its disproportionate division of the estate, and these considerations go beyond the conduct that was addressed by the tort recovery:

---

   [15] We are not faced here with allegedly missing findings about "the characterization and value of all assets, liabilities, claims, and offsets on which disputed evidence has been presented." *See* Tex. Fam. Code § 6.711(a). Ricky does not dispute the amount of Shannon's attorneys' fees shown in the evidence or their characterization as separate or community debts.

- Ricky has great "capacit[y] and abilit[y]" and "business opportunities," *see Murff*, 615 S.W.2d at 699; *Ross*, 2004 WL 792317, at *4, in part because of his training and experience in financial advising and overseeing and managing financial advisors—so much so that because, he testified, of "[t]he knowledge [he] ha[s], [he] could have gone anywhere in this industry in town" when he took his current job and could have been highly compensated;

- Ricky has valuable retirement accounts, *see Murff*, 615 S.W.2d at 700, including a 401(k) with his current employer, a pension with his current employer, and a pension with a past employer;

- as for the parties' "relative financial condition and obligations" and the "size of [the] separate estates," *see id.* at 699, Shannon owed large amounts in personal loans, and Ricky owned a valuable car while Shannon only leased a car; and

- Ricky was, according to the trial court, not credible, *see id.* at 700.

Because of these considerations supported by the evidence, "[t]he trial court did not have to rely on" the conduct that was addressed by Shannon's tort recovery "as a basis for the property division" disproportionately in her favor. *See Ross*, 2004 WL 792317, at *4. Thus, "[h]aving reviewed the evidence and indulging every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing community assets," we hold that the court did not abuse its discretion in awarding the disproportionate share represented by the attorneys'-fees award. *See id.* (internal citation omitted) (citing *Murff*, 615 S.W.2d at 699). "Because we conclude that the disproportionate division of property can be supported on grounds other than" the tortious conduct, we "presume that the trial court properly exercised its discretion and did not rely on the same conduct to support both the disproportionate division of the property and the damages for intentional infliction of emotional distress" and assault. *See id.* "We therefore hold that the trial court's judgment did not result in a double recovery." *See id.*

For many of the same reasons, we also conclude that the overall just-and-right division was not unjust. *See Murff*, 615 S.W.2d at 699; *Gupta*, 2010 WL 2540487, at *6. The

37

overall division was based on permissible considerations supported by the evidence. The court thus did not abuse its discretion in making the attorneys'-fees award a part of, or at least related to, the overall just-and-right division, and the overall division is not made unjust by the fees award. *See Gupta*, 2010 WL 2540487, at \*6. We thus overrule Ricky's remaining issue.

## CONCLUSION

We reverse the portion of the trial court's decree that awarded a money judgment for the retroactive child support and render judgment that Shannon take nothing on her request for a money judgment for the retroactive child support. We do not otherwise alter the portion of the decree that merely awarded retroactive child support. We affirm the decree in all other respects.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Affirmed in Part; Reversed and Rendered in Part

Filed:   June 28, 2024

38